IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RORY MCKELLIPS,

                    Petitioner,            OPINION AND ORDER

          v.                                17-cv-428-wmc

DAN WINKLESKI[1],

                    Respondent.

Rory McKellips was convicted in Wisconsin circuit court in 2013 for using a computerized communication system to facilitate a child sex crime in violation of Wis. Stat. § 948.075. On direct appeal, he argued, among other things, that the phrase "computerized communication system" in § 948.075 is unconstitutionally vague. This argument was ultimately considered and rejected by the Wisconsin Supreme Court, who held both that: (1) the phrase was not vague; and (2) an ordinary person would understand that § 948.075 had criminalized the use of a flip-style, cellular phone to entice a child under 16 years to engage in sexual activity.

Repeating his argument that Wis. Stat. § 948.075 is void for vagueness in violation of the Fourteenth Amendment of the United States Constitution, petitioner McKellips seeks habeas corpus relief from this court. He also argues that the trial court read a misleading jury instruction in violation of McKellips' Fourteenth Amendment due process rights. For the reasons explained below, this court rejects his arguments and will deny his petition for habeas relief.

---

[1] Dan Winkleski, now the warden at the New Lisbon Correctional Institution where petitioner is in custody, has been substituted for his predecessor as the proper respondent in this action.

FACTS[2]

In late 2011, the State filed a criminal complaint in the Circuit Court for Marathon County, charging McKellips with:  repeated sexual assault of a child, referred to here and in state court as "C.H."; exposing genitals or pubic area; use of a computer to facilitate a child sex crime, in violation of Wis. Stat. § 948.075; and resisting or obstructing an officer. At the time of these charged crimes, McKellips was a 56-year-old coach of the Athens High School varsity girls' basketball team, and C.H. was a talented freshman on that team.  The two developed a close relationship that ended altogether after C.H.'s parents discovered she had been communicating with McKellips on a cellphone, which McKellips secretly provided to C.H. after her parents forbade any communicating with the coach on her regular cellphone.  Indeed, after this discovery, C.H. disclosed for the first time, initially to her parents, then to police, that she had sexual contact with McKellips on four, separate occasions between June and August of 2011.  Ultimately, the police investigation also revealed 8,324 total contacts between McKellips' cellphone and C.H.'s regular cellphone between December 18, 2010 and July 27, 2011, and 2,426 contacts between McKellips' cellphone and C.H.'s "secret" cellphone between June 10, 2011 and July 27, 2011.  The phone McKellips used to communicate with C.H. throughout this time was a Motorola Moto 408-G, with prepaid service through TracFone.

Before trial, McKellips moved to dismiss Count 3 of the Information, which alleged a violation of Wis. Stat. § 948.075, which states in relevant part that:

---

[2]The facts are largely drawn from the Wisconsin Supreme Court's opinion, *State v. McKellips*, 2016 WI 51 ¶¶ 11-26, 369 Wis. 2d 437, 448-57, 881 N.W.2d 58 (2016), and from the record of the state court proceedings, which is attached to the State's answer, dkt. #13.

(1r) Whoever uses a computerized communication system to communicate with an individual who the actor believes or has reason to believe has not attained the age of 16 years with intent to have sexual contact or sexual intercourse with the individual in violation of s. 948.02(1) or (2) is guilty of a Class C felony.

…

(3) Proof that the actor did an act, other than use a computerized communication system to communicate with the individual, to effect the actor's intent under sub. (1r) shall be necessary to prove that intent.

Specifically, McKellips argued that no reasonable jury could find that he committed this charged offense because a mobile phone without independent internet capabilities is not a "computerized communications system" as required by Wis. Stat. § 948.075(1r). Alternatively, he argued that the statute was unconstitutionally vague as applied to him because persons of ordinary intelligence would not understand that use of a mobile phone without independent internet capabilities would constitute use of a computerized communication system. The circuit court denied McKellips' motion, and the Wisconsin Court of Appeals denied his request for interlocutory review before the criminal case proceeded to trial before a jury on June 24 to June 28, 2013.

At trial, the State elicited expert testimony from Ryan Kaiser, a cell phone repair company owner and employee, who examined McKellips' cellphone at the request of the police. Kaiser testified that the phone had logical functions, predictive texting, memory, and the ability to take pictures and videos, as well as some internet capabilities. Kaiser also testified that *all* cellphone carriers are wirelessly connected to a local server and use a computer system or network, especially when sending text messages.

After closing arguments, the trial court provided the standard jury instruction on "use of a computer to facilitate a sex crime," as well as a supplemental instruction and definition of "computer."  The supplemental instruction read as follows:

> Evidence has been received that the defendant communicated with a child under the age of 16 via a mobile or cellphone. You must determine whether the phone described in the evidence constitutes a computerized communication system.
> To aid you in that determination, you are instructed that under Wisconsin law, a computer is defined as – computer is defined as a computer, which means an electronic device that performs logical, arithmetic, and memory functions by manipulating electronic or magnetic impulses, and includes all input, output, processing, storage, computer software and communication facilities that are connected or related to a computer in a computer system or computer network.  Computer system is defined as a set of related computer equipment, hardware, or software.

McKellips did not object to these instructions.

After deliberating, a lay jury found McKellips guilty on charges of obstruction and violating § 948.075(1r), but not guilty on the two, other charges.  On the computer charge alone, McKellips was sentenced to 15 years, consisting of ten years of initial confinement to be followed by five years of extended supervision.   He was also sentenced to a concurrent, nine-month sentence on the obstruction charge.

On direct appeal, McKellips principally argued that:  (1) he did not violate § 948.075(1r) because his older style "flip phone" had no independent internet capabilities; and (2) § 948.075(1r) was unconstitutionally vague as interpreted and applied by the circuit court.  With regard to the latter argument, McKellips again argues that persons of ordinary intelligence would be confused as to whether use of a mobile phone lacking independent internet capabilities constituted use of a "computerized computer

4

system" under § 948.075(1r).  In addition, he argued that the trial court erred in admitting "other acts" evidence at trial.

The Wisconsin Court of Appeals then reversed in a March 17, 2015, opinion, although not on any of the grounds raised by defendant.  Rather, the court of appeals determined *sua sponte* that the trial court's jury instruction regarding § 948.075(1r) misdirected the jury by asking whether the cellphone *itself* constituted the computerized communication system, rather than "whether McKellips' various alleged uses of the cell phone constituted communication via a computerized communication system."  *State v. McKellips*, 2015 WI App 31, ¶ 22, 361 Wis. 2d 773, 864 N.W.2d 106.  Accordingly, the court of appeals concluded that the "real controversy" had not been fully tried, and thus, exercised its discretionary authority under Wis. Stat. § 752.35 to reverse McKellips' conviction under § 948.075(1r) and order a new trial.

However, the Wisconsin Supreme Court granted the State's petition for review in November 2015 and reversed the appellate court's ruling approximately 7 months later. *State v. McKellips*, 2016 WI 51, 369 Wis. 2d 437, 881 N.W. 2d 258.  *First*, the supreme court rejected outright McKellips' argument that he was not guilty of violating the statute because his flip phone did not use the internet.  Recognizing that the phrase "computerized computer system" was not defined in the statute, the court determined that the phrase was not a technical term but rather was "three commonly understood words used together." *Id*. at ¶ 33.  Moreover, the court found that putting the three definitions together yielded the meaning of the phrase "computerized communication system":  "A group of interacting, interrelated, or interdependent elements forming a complex whole used to

exchange thoughts or messages through a computer." *Id*. at ¶ 34.  Applying that definition, the court went on to find that McKellips' use of his flip-style phone to exchange texts with C.H.'s cellphone satisfied that element of Wis. Stat. § 948.075(1r).  *Id*. at ¶ 36.

*Second*, the Wisconsin Supreme Court rejected McKellips' vagueness challenge. After setting out the legal standard and applying its plain meaning definition, the court similarly found that the phrase "computerized communication system" was not vague, and that its meaning (1) could be readily discerned by a person of ordinary intelligence, and (2) provided a clear and objective standard for law enforcement.  *Id*. at ¶¶ 42, 45.  In reaching this conclusion, the supreme court went farther, crediting the Wisconsin Legislature for choosing a term expansive enough to encompass reasonably future technologies that might be used to commit sex crimes against minors, while at the same time providing fair notice that using a cellphone to text a child in order to entice a sexual relationship violates the statute.  *Id*. at ¶ 44.  Notably, observed the court -- in addition to the use of a computerized communication system – a conviction under Wis. Stat. § 948.075 requires proof of the actor's "intent to have sexual contact or sexual intercourse" *and* "[p]roof that the actor did an act, other than use a computerized communication system to communicate with the individual, to effect the actor's intent under sub. (1r)." *Id*. at ¶ 43 (quoting § 948.075(1r), (3).  In particular, the Wisconsin Supreme Court observed that it would be "absurd to suggest … a person of ordinary intelligence would not read the language of § 948.075 as fair notice that using a cellphone to send text messages to lure a child into sexual activity is against the law." *Id*.

*Third*, the supreme court rejected McKellips' argument that the court's supplemental language to the standard jury instruction for Wis. Stat. § 948.075(1r) was misleading and not harmless. As an initial matter, the court noted that McKellips had forfeited this issue by failing to object to the jury instruction at trial or in his appeal to the Wisconsin Court of Appeals. *Id*. at ¶ 47 ("Failure to contemporaneously object to jury instructions results in forfeiting review of the jury instructions.") (citing *State v. Cockrell*, 2007 WI App 217, ¶ 36, 306 Wis.2d 52, 741 N.W.2d 267). Nevertheless, the Wisconsin Supreme Court went on to address the issue on the merits, finding that (1) the jury instructions as a whole accurately stated the law, and (2) if not, any error was harmless. *Id*. at ¶ 49. The supreme court also held that the court of appeals erred in exercising its discretionary authority under Wis. Stat. § 752.35 to reverse McKellips' conviction because the real controversy was fully tried, and the facts surrounding his conviction fell short of that standard. *Id*. at ¶ 51-52.

Two justices dissented from the court's opinion, with Wisconsin Supreme Court Justice Shirley Abrahamson arguing in a separate opinion that: (1) § 948.075 was unconstitutionally vague for failing to provide fair warning of prohibited conduct; and (2) the jury instruction misstated the law, underscoring the lack of objective enforcement standards. *Id.* at ¶ 60.

Finally, McKellips filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on November 7, 2016. *McKellips v. Wisconsin*, -- U.S. --, 137 S. Ct. 453 (2016).

OPINION

In seeking federal habeas relief from this court, petitioner reasserts his claim that Wis. Stat. § 948.075(1r) is unconstitutionally vague.  In addition, he argues that the instructions read to the jury were erroneous and violated due process.  As explained below, however, this court has no basis to second-guess the Wisconsin Supreme Court's holding as to the meaning of a Wisconsin Statute based on petitioner's renewed vagueness challenge.  Moreover, petitioner procedurally defaulted any review of his jury instruction claim, which also fails on its merits.

## I. Vagueness

As with all habeas petitions, since the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, took effect, this court may grant habeas relief only if petitioner shows that the Wisconsin Supreme Court's decision on his vagueness challenge was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court.[3]  28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015).  A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  A state court decision is an "unreasonable application of . . . clearly established federal law" when

---

[3] Habeas relief is also available if the petitioner can show that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  However, McKellips does not seek habeas relief on this ground.

the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id*. The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

Under clearly established, federal law, the parties agree that a penal statute is void for vagueness if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). As in this case, when First Amendment or other constitutional interests are not directly implicated, the court must examine the statute as applied to the facts of record. *See Chapman v. United States*, 500 U.S. 453, 467 (1991). Therefore, although petitioner purports to challenge the statute both on its face and as applied to him, this court will consider only the application of the statute as enforced against petitioner and will not speculate as to whether there might be some ambiguity in a hypothetical case.[4] *See Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).

Moreover, as petitioner appears to concede, the Wisconsin Supreme Court recognized the controlling legal standard in deciding the merits of his direct appeal. *McKellips*, 2016 WI 51, ¶ 41 ("A statute is unconstitutionally vague if it fails to give fair notice to a person of ordinary intelligence regarding what it prohibits and if it fails to provide an objective standard for enforcement.") (citing *State v. Pittman*, 174 Wis. 2d 255, 276, 496 N.W.2d 74 (1993)). As for that court's citation to state rather than federal cases,

---

[4] For example, even petitioner appears to concede that the statute would not offend the U.S. Constitution if applied to a person who "trolled the internet" in search of underage victims. (Pet.'s Br. Supp. (dkt. #16) 9.)

its doing so is largely irrelevant, "so long as neither the reasoning nor the result of the state-court decision contradicts" clearly established federal law.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Brown*, 544 U.S. at 141.

Nevertheless, petitioner persists in his assertion that the Wisconsin Supreme Court reached a decision that was somehow clearly "contrary to" federal precedent in holding that the meaning of the phrase "computerized communication system" in Wis. Stat. § 948.075 was not plain enough to people of ordinary intelligence by merely combining the common meaning of each word in the phrase.  Specifically, petitioner argues that the court's decision was contrary to the United States Supreme Court's 2015 decision in *Johnson*.  (Pet.'s Br. in Supp. (dkt. #16) 6-7).

Unfortunately for petitioner, even a brief examination of the Supreme Court's decision in *Johnson* reveals petitioner's argument to have little or no merit.  In *Johnson*, the Court struck down as unconstitutionally vague the residual clause of the Armed Career Criminal Act, which provided for an enhanced sentence if the violator had three or more earlier convictions for a "violent felony," defined as "burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*."  576 U.S. at 594 (emphasis in original).  As a result, the *Johnson* Court explained that the ACCA's residual clause required courts to utilize a "categorical approach," in which the "serious potential risk" standard was applied to an "idealized ordinary case of the crime," rather than examine the particular conduct in which an individual defendant may have engaged.  *Id*. at 597.  Without adopting this more universal standard, the Court explained, experience had shown that individual evaluations had failed

10

to produce "evenhanded, predictable, or consistent" applications, even with the Court's attempt to clarify the residual clause's meaning in earlier cases. *Id*. at 605-06.

The language and concerns considered in *Johnson* bear little, if any, resemblance to this case. As an initial matter, § 948.075 contains none of the specific terms used in the ACCA's residual clause, much less any similar, broadly-worded provisions that demand a wide-ranging, individualistic inquiry into abstract notions of how much risk of injury is posed in an "ordinary case" of a particular crime. Given the stark differences between the statutory provisions, therefore, petitioner has no basis to argue that the facts of this case are "materially indistinguishable" from *Johnson*. Accordingly, petitioner must demonstrate that the Wisconsin Supreme Court "unreasonably applied" *Johnson* and other, clearly established Supreme Court precedent in rejecting his vagueness challenge.

A state court decision is only unreasonable when it "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir.2002) (citation omitted). Stated differently, if "'fairminded jurists could disagree' on the correctness of the state court's decision," then habeas relief is precluded. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). However persuasive the dissent from the Wisconsin Supreme Court's ruling in this case may be, the majority's opinion does not fall "well outside the boundaries of permissible differences of opinion."

In particular, the Court's holding that Wis. Stat. § 948.075 was not unconstitutionally vague simply because the term "computerized communication system" was not defined in the statute itself falls within the bounds of current constitutional law.

11

A statutory term need not be defined with utmost precision in order to survive a facial vagueness challenge. *Smith v. Goguen*, 415 U.S. 566, 578 (1974); *see also Colten v. Kentucky*, 407 U.S. 104, 110 (1972) (due process requirements are not "designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited"). Moreover, under § 2254(d)(1), "the range of reasonable judgment can depend in part on the nature of the relevant rule" for which habeas review is being sought. *Alvarado*, 541 U.S. at 664. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. Indeed, the vagueness inquiry is itself a general one, so its application in a specific case applying a general rule can "demand a substantial element of judgment." *Id*.

Employing this standard, the Wisconsin Supreme Court held that an ordinary person could determine the straightforward meaning of the phrase "computerized communication system" by combining the common meaning of each word. As that court also explained, some breadth in its definition was necessary to account for evolving technologies that used computerized communications systems to commit child sex crimes (whether by mobile phone systems or the hard drive of a main frame computer) provided that breadth did not preclude an ordinary person from understanding its meaning. Even if this federal court disagreed with that court's conclusion, habeas relief is still unavailable because the decision was not "objectively unreasonable." To the contrary, the Wisconsin Supreme Court's decision took federal constitutional law seriously and head on, then

simply reached an outcome with which reasonable jurists may agree or disagree.  As a result, this is not the rare habeas case where "there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 102–03.

Petitioner's remaining arguments to the contrary are unconvincing.  Noting that the state prosecution called an expert to explain to the jury how petitioner's flip-style phone worked, petitioner argues:  "If it was necessary to present an expert to explain to a jury that the flip phone was a computerized communication system, then it would logically follow that the term is not readily understandable by a person of ordinary intelligence."  (Br. in Supp. (dkt. # 16) 3.)  Though facially appealing, this argument is both factually inaccurate and logically flawed.  First, the expert did *not* opine that the flip phone was a "computerized communication system."   Rather, he testified about how petitioner's phone actually worked, explaining its functions, how messages were sent, and how it interacted with servers and computers as part of a larger cellular network.   Second, the fact that the prosecution prudently adduced expert testimony to establish one of the necessary elements of the charge does not prove that ordinary persons would not understand that using a cellphone connected by a computerized communicating system to exchange text messages with a child to lure her into sexual activity is against the law any more than a law prohibiting a person from possessing cocaine or a felon possessing a firearm was somehow too vague or failed to provide fair notice merely because the government called an expert to testify that the substance found on a person was cocaine or the plastic, one-off gun

formed with computer technology met the ordinary elements of a firearm as understood by an ordinary person.

Even less persuasive is petitioner's argument that the failure of the Wisconsin Court of Appeals and the Wisconsin Supreme Court to agree *unanimously* on the specific meaning of "computerized communication system" is proof of the statute's vagueness.  Again, petitioner's logic is flawed, since statutes regularly survive vagueness challenges even though some jurists have been persuaded by an alternative interpretation of a specific term or phrase required to satisfy an element of the crime, or go further and find the term or phrase constitutionally vague.  Certainly, the Supreme Court held no such thing in *Johnson*, and petitioner offers no other support under federal constitutional law for his position.  More importantly, the fact that there were dissenting jurists in petitioner's case below in state court does *not* mean that the majority *unreasonably* concluded the statute was not vague for purposes of federal habeas.  Again, if anything, the fact that "fair-minded jurists could disagree" about an issue as it proceeded through the state courts *precludes* habeas relief in federal court under § 2254 after AEDPA.  *Alvarado*, 541 U.S. at 664.

Finally, petitioner repeats his argument that he merely "used his phone, in the same manner millions of people use their phones every day, to have a conversation with a person he knew in real life via text messages," and that the absence of a standard as to what constitutes a "computerized communication system" made it impossible for him to know what conduct the statute prohibited.  (Br. in Supp. (dkt. #16) 9.)  As the Wisconsin Supreme Court pointed out, however, to prove intent under § 948.075 also requires proof of the actor's "intent to have sexual contact or sexual intercourse" with an individual under

16 and "[p]roof that the actor did an act, *other than use a computerized communication system* to communicate with the individual, to effect the actor's intent." Wis. Stat. § 948.075(1r), (3). As that court reasonably concluded, "[i]t is absurd to suggest that a person of ordinary intelligence would not read the language of § 948.075 as fair notice that using a cellphone to send text messages to lure a child into sexual activity is against the law." As a result, although couched as a constitutional vagueness challenge, petitioner's arguments reflect little more than a disagreement over how a state court interpreted a state penal statute, and is beyond the purview of this federal court. *See Lechner v. Frank*, 341 F.3d 635, 641 (7th Cir. 2003) (quoting *Cole v. Young*, 817 F.2d 412, 416 (7th Cir. 1987)) (finding it well established that "[s]tate courts are the ultimate expositors of their own states' laws and federal courts . . . are bound [on habeas review] by the construction placed on a state's criminal statutes by the courts of that state except in extreme circumstances"); *Hebert v. Louisiana*, 272 U.S. 312, 316 (1926) ("Whether state statutes shall be construed one way or another is a state question, the final decision of which rests with the courts of the state.").

Said another way, violations of state laws are cognizable only if they resulted in fundamental unfairness and consequently violate a petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Here, despite petitioner's argument that the statute does not apply to him because he did not use a "computerized communication system," the Wisconsin Supreme Court's conclusion that the statute provided more than sufficient notice that petitioner's conduct was prohibited and subject to punishment under

§ 948.075 is neither unreasonable nor fundamentally unfair.  Accordingly, petitioner is not entitled to habeas relief on his vagueness claim.

## II.  Jury Instruction

Petitioner's claim that the jury instruction on the Wis. Stat. § 948.075(1r) charge violated his due process rights requires little discussion.  As an initial matter, petitioner failed to respond in any meaningful way to respondent's compelling assertion that petitioner procedurally defaulted this claim.  In fairness, petitioner points out that the Wisconsin Court of Appeals considered the correctness of jury instruction *sua sponte*, and the Wisconsin Supreme Court reviewed that determination, but he then ignores the respondent's further arguments that petitioner procedurally defaulted his claim by:  (1) failing to object to the instruction at trial, which respondent argues was an "independent and adequate" state procedural default that prevents federal consideration of the claim, notwithstanding the Wisconsin Supreme Court's alternative ruling on the merits, *e.g.*, *Harris v. Reed*, 489 U.S. 255, 260 (1989); and (2) petitioner violated the "fair presentment" doctrine by failing to articulate a federal due process claim clearly in his arguments before the Wisconsin Supreme Court, *e.g., Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992).  Indeed, all petitioner offers in response is his unsupported assertion that "[t]he state courts have had a meaningful opportunity to 'pass upon the substance of the claims' now presented for habeas review[.]" (Reply Br. (dkt. #20) 4).  Such "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

16

Putting procedural default and waiver aside, petitioner's challenge to the jury instruction also has no substantive merit.  Petitioner has made no attempt to show that any alleged errors in the jury instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72.  This is the *only* question for a federal court on habeas review, not whether a jury instruction may have been incorrectly interpreted under state law.  *Id*.  Instead, as petitioner concedes, his challenge to the jury instruction is merely a repeat of his vagueness challenge, not a due process challenge. (Reply Br. (dkt. #20) 5) ("It is because this statute is unconstitutionally vague that the jury instruction is also unconstitutional and violates Mr. McKellips['] right to due process of law pursuant to the 14th Amendment.").  Accordingly, since this court has already determined above that petitioner is *not* entitled to habeas relief on vagueness grounds, he has certainly failed to prove entitlement to habeas relief on his corresponding challenge to the state jury instruction.

In sum, neither of petitioner's claims is one on which federal habeas relief can be granted, and his petition must be dismissed.

### III.  Certificate of Appealability

The final question before this court is whether to issue a certificate of appealability of this final opinion and order adverse to the petitioner.  28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  To make a substantial showing, petitioner must show that "reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted).  Under current federal law, this court is left to conclude that although reasonable jurists may disagree whether the statute at issue is vague, reasonable jurists would agree the Wisconsin Supreme Court's holding that the term "computerized communication system" was readily discernible by persons of ordinary intelligence was *not* patently unreasonable or fundamentally unfair.  Accordingly, no certificate shall issue.

ORDER

IT IS ORDERED that:

1.  Rory McKellips' petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED, and the petition is DISMISSED with prejudice; and

2.  A certificate of appealability is DENIED.

Entered this 26th day of April, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge